SHIFFLET ET AL., APPELLANTS, *v.*
THOMSON NEWSPAPERS (OHIO), INC. ET AL., APPELLEES.

[Cite as Shifflet v. Thomson Newspapers, Inc. (1982),
69 Ohio St. 2d 179.]

(No. 81-247—Decided February 10, 1982.)

*Simakis & Simakis Co., L.P.A.,* and *Mr. James K. Simakis,* for appellants.

*Messrs. Wiedemann, Wiedemann & Taube* and *Mr. William Wiedemann,* for appellee Thomson Newspapers.

*Mr. John H. Hix* and *Mr. Jonathan Williamson,* for appellee Kelley.

*Mr. Robert E. Wilson,* for appellee Scantland Broadcasting.

*Mr. F. Riley Hall, Mr. Thomas K. Jenkins* and *Mr. S. Fredrick Zeigler,* for appellees Munn and Sansotta.

*Per Curiam.*

## I.

Appellants raise two issues in regard to their suit against Thomson Newspapers and Scantland Broadcasting. First, appellants contend that summary judgment was improper for there was a genuine issue of material fact at issue; namely, whether appellant was ever convicted of indecent exposure. Appellants assert that there was never a conviction, but rather only a bond forfeiture, and hence the following article which appeared in the Marion Star was false:

"Daniel E. Shifflet, 4947 Prospect-Upper Sandusky Road, S., was granted an order of expungement of a 1965 indecent exposure conviction."

There is no doubt that an order of expungement was granted.[1] R. C. 2953.32 provided the sole statutory basis for an expungement proceeding in 1978. This section stated, in part, that: "A *first offender* may apply to the sentencing court, if *convicted* in the state * * * ."[2] (Emphasis added.) Since R. C. 2953.32 only permitted expungement of a conviction, the granting of an order of expungement necessarily included the finding of an existing conviction. Without such a finding, the court would lack jurisdiction to grant the expungement.[3]

Moreover, as the Court of Appeals stated, " * * * ap-

---

[1] The record is clear that appellant Daniel Shifflet sought from the court the order of expungement and appeared in open court at the hearing. In addition, appellant stated in his deposition that the expungement was granted. Moreover, while the municipal court record is not before this court, the municipal court entry granting the expungement is part of the record as an exhibit in the deposition of Kevin Lamiman.

[2] In 1978, R. C. 2953.32(A) provided in full that:

"A first offender may apply to the sentencing court if convicted in the state or to a court of common pleas if convicted in another jurisdiction for the expungement of the record of his conviction, at the expiration of three years if convicted of a felony, or at the expiration of one year if convicted of a misdemeanor, after his final discharge."

A first offender was defined in R. C. 2953.31, as follows:

"As used in sections 2953.31 to 2953.36 of the Revised Code, 'first offender' means anyone who has once been convicted of an offense in this state or any other jurisdiction. When two or more convictions result from or are connected with the same act, or result from offenses committed at the same time, they shall be counted as one conviction."

[3] It should be stressed that the appellants have not charged the municipal court with unwarranted or improper action. Appellants' action is for defamation, and is neither a direct nor collateral attack upon the action taken by the municipal court.

pellant's contention overlooks the actual impact and meaning of the reported statement. It clearly makes no assertion that the appellant, Daniel E. Shifflet, was guilty of anything. What it does state is that he was granted an order of expungement of a conviction which is a quite different assertion. The existence or validity of any judgment of conviction is not asserted. What is asserted is concerned with action by the Municipal Court and the statement that it granted an order of expungement of a conviction. Whether this action was correct or not was not a part of the statement. It was made as part of the Municipal Court news, as reported action of that court, as clearly shown by the heading, and constituted a statement not as to a 1965 conviction, but as to a contemporary action by the municipal court concerning such a conviction."

The issue thus presented in this case is whether the events which occurred at the hearing were truthfully reported. It is clear from the record that the municipal court expunged a conviction on the application of the appellant, who necessarily represented himself to that court as a first offender convicted of a crime to be eligible for such relief. The statement by the newspaper that the municipal court had expunged the record of a 1965 conviction was thus in fact true. Reasonable minds could not disagree that the newspaper reported and stated what in fact the municipal court did. Since truth is always a defense in any action for libel or slander,[4] appellants' claim on these grounds must fail.

In considering the article at issue, which we have concluded is a true statement of the action taken by the trial court, this court is also mindful of the statutory privilege of reporting judicial proceedings found in R. C. 2317.05 that provides:

"The publication of a fair and impartial report of the return of any indictment, the issuing of any warrant, the arrest of any person accused of crime, or the filing of any affidavit, pleading, or other document in any criminal or civil

---

[4] R. C. 2739.02 provides that:

"In an action for a libel or a slander, the defendant may allege and prove the truth of the matter charged as defamatory. Proof of the truth thereof shall be a complete defense. In all such actions any mitigating circumstances may be proved to reduce damages."

cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged, unless it is proved that the same was published maliciously * * * ."

Case law has also recognized such a privilege. As the United States Supreme Court noted in *Cox Broadcasting Corp.* v. *Cohn* (1975), 420 U. S. 469, at 492-493:

"The special protected nature of accurate reports of judicial proceedings has repeatedly been recognized. This Court, in an opinion written by Mr. Justice Douglas, has said:

" 'A trial is a public event. What transpires in the court room is public property. * * * *Those who see and hear what transpired can report it with impunity.* There is no special prerequisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.' *Craig* v. *Harney,* 331 U. S. 367, 374 (1947) (emphasis added.)" (Citations omitted.)

The newspaper report at issue herein unquestioningly constituted a fair and impartial report of a judicial proceeding. The reporter was personally present at the court proceedings and the record so reveals, that all of the information reported in the publication was obtained by the news reporter from the hearing in the courtroom and from the public court records before they were sealed as a result of the expungement. Furthermore, the record is also void of any evidence of malice.

This court agrees with the judgment of the lower courts that the First and Fourteenth Amendments would not permit exposing the press to liability for truthfully publishing information released to the public in court proceedings and from court records. See *Landmark Communications, Inc.,* v. *Virginia* (1978), 435 U. S. 829; *Oklahoma Publishing Co.* v. *District Court* (1977), 430 U. S. 308; *Cox Broadcasting Corp.* v. *Cohn, supra.* The facts that the publications made by appellees were true and represented fair and impartial reports about judicial proceedings are thus a complete defense to any of the various theories of liability proposed by appellant.

In a corresponding argument, appellants assert in their second proposition of law that expungement proceedings must be deemed closed proceedings in order to effectuate the

legislative intent of, and the public policy considerations underlying, the expungement statutes.

At the outset, it must be emphasized that prior restraint of the press in reporting court proceedings bears a heavy presumption against its constitutional validity. *Bantam Books, Inc.,* v. *Sullivan* (1963), 372 U. S. 58; *Organization for a Better Austin* v. *Keefe* (1971), 402 U. S. 415.

While a judge, in a proper exercise of discretion, may conduct an expungement proceeding in closed court, relevant statutory law does not so require. In examining the expungement statutes,[5] this court finds no intention of the General Assembly to provide for a closed proceeding, for there is no provision either mandating or authorizing a closed hearing. Nor do we find any provision which prohibits a private individual, in contrast to a public official,[6] from disseminating information of any arrest, indictment, trial, or conviction of an individual whose record has been expunged. In the absence of clear and carefully delineated language, the General Assembly cannot be held to imply an invasion of the constitutional right to attend criminal trials. See, generally, *Richmond Newspapers, Inc.* v. *Virginia* (1980), 448 U. S. 555.

Nor do public policy considerations mandate a closed hearing. The Court of Appeals stated, and this court agrees, that "[i]t is clearly the object of the [expungement] statute, not to censor or render actionable the memories and statements of the general public as to observed past events or court records but to prevent public officials from *further* dissemination of these records except under the special circumstances noted. To reach out and attempt to render untrue that which a member of the general public, in this case a reporter, has in fact observed and heard in a court proceeding would be, in our opinion, clearly beyond the purposes of the statute. It would turn it from the limited shield it may be for the offender, into a sword for the confounding of the public which has a right, except perhaps in special circumstances not here applicable or apparent, to attend criminal proceedings and a right to speak the truth." (Emphasis *sic.*) See, generally, R. C. 2953.32(D) and (E); 2953.33; 2953.35.

---

[5] See R. C. 2953.31 *et seq.*

[6] See R. C. 2953.35.

## II.

In his proposition of law which relates solely to his suit against Ruth Kelley, appellant Daniel Shifflet contends that an action for slander *per quod* was established.

Upon examination of the record herein, this court finds it inappropriate to decide this issue. The sole argument[7] before the Court of Appeals was whether the two statements alledgedly made by Ruth Kelley were slanderous *per se*. On appeal to this court, however, appellant has argued this matter on the basis of a slander *per quod* theory.[8]

Since the appellant did not argue the issue of slander *per quod* below, the Court of Appeals rightfully made no decision with respect to that issue. It is a well-established principle that this court " * * * will not hold that the Court of Appeals erred in not considering or deciding a claim of error 'not assigned or specified' in that court and 'not argued by brief' in that court." *Toledo* v. *Reasonover* (1965), 5 Ohio St. 2d 22, 25.

---

[7] It is clear that the Court of Appeals only considered whether the alleged statements constituted slander *per se*. In regard to appellant's first assignment of error, the Court of Appeals stated that "[t]he issue is: were the admitted words, established by admission, slander per se?"; and also stated that "[h]ere the assignment of error is directed entirely to the action of the trial court in determining the words to be not libel or slander per se in any of the categories of slander per se alleged."

As to appellant's second assignment of error, the court stated that "[a]ppellant asserts that the words taken in context are slanderous per se," that "the words were susceptible of an innocent interpretation and hence were not libelous per se * * * ," and that "[t]he action therefore of the trial court in ruling the words were not slanderous per se was correct."

[8] In *Becker* v. *Toulmin* (1956), 165 Ohio St. 549, 556, this court stated that " * * * libel *per se* means libel of itself, or upon the face of a publication, whereas libel *per quod* is libel by an interpretation, through an innuendo, between an innocent or harmless meaning and a libelous one."

Furthermore, this court stated the following in paragraph four of the syllabus of that case: "Where the words of a publication are not libelous *per se* but are claimed to be so by innuendo, such words can only constitute libel *per quod* and are not actionable in the absence of proof of special damages to the one claiming to be libeled."

Hence, as the Court of Appeals stated, an action in slander *per se* is " * * * concerned with the words themselves and no more. If more be considered it is 'innuendo' and is the subject matter solely of slander per quod. Thus if reference must be had to circumstances surrounding the statement, as distinguished from the words themselves, there is no slander per se."

## III.

Appellant's next proposition of law pertains solely to his suit against Munn and Sansotta. Appellant claims that the Court of Appeals' grant of summary judgment on the basis that the truth of the statement which appellant claimed libeled him was established by express and implicit allegations in appellant's complaint was improper.

"It is a well settled rule, that parties are bound by their written admissions made in the progress of a cause as a substitute for proof of any material fact, and cannot repudiate them at pleasure." *Peckham Iron Co.* v. *Harper* (1884), 41 Ohio St. 100, 105-106. See, also, *Faxon Hills Construction Co.* v. *United Brotherhood of Carpenters and Joiners of America* (1958), 168 Ohio St. 8, 10-11. It is generally held that where a party has alleged a matter of fact in his pleadings, the pleadings are evidence against him as an admission of fact so alleged. See 2 Jones on Evidence (6 Ed.), 502, Section 13:40 and cases cited therein; 4 Wigmore on Evidence (Chad. Rev.), 67, Section 1064 and cases cited therein.

Appellant alleged that appellees Munn and Sansotta slandered him by conversing with others about the indecent exposure matter and expungement proceedings. Yet, in his pleadings, appellant alleged facts concerning his expungement. The Court of Appeals found that " * * * [i]n the second claim for relief the plaintiff asserts that the defendants are public officials bound by the provisions of R. C. 2953.31, et seq., on threat of criminal liability, not to disclose information pertaining to an expungement. The plaintiff uses the term 'alleged expungement' but there could be no criminal liability on the part of defendants or a civil liability on their part arising from their violation of such criminal statute unless there had been an expungement of a *conviction* for the crime which the plaintiff claims was the subject matter of the statements attributed to the defendants. Thus it is implicit in the plaintiffs amended complaint that for there to be an expungement for that crime, there also had to be a conviction for that crime. It also follows, as night follows day, that if defendant had been convicted of the subject crime that he had a police record for same, if not before, certainly after, the conviction. Thus, the truth of the statement that 'Dan Shifflet had [past tense] a

police record for exposing himself to children,' may be, and is, established, * * * by the express and implicit allegations of plaintiff's complaint, to which allegations plaintiff must be held." (Emphasis *sic.*)

The Court of Appeals was correct in finding that the truth of the alleged statements of appellees was established by the express and implicit allegations made by the appellant in his own pleading. Appellant filed nothing in opposition to appellees' motion for summary judgment, and since truth of the alleged statement negated the alleged slander, appellees were entitled to summary judgment pursuant to Civ. R. 56.

For the foregoing reasons, the judgments of the Court of Appeals are affirmed.

*Judgments affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.