BALES ET AL., APPELLANTS, *v.* HACK ET AL., APPELLEES.

(No. 2180—Decided November 28, 1986.)

*Doughty & Doughty* and *James A. Doughty,* for appellants.

*Rieser & Marx* and *Dianne F. Marx,* for appellees.

BROGAN, P.J. On June 5, 1984, plaintiff-appellant Michael L. Bales filed a complaint for divorce from his wife, Sandra McVeigh, alleging gross neglect of duty and extreme cruelty. McVeigh answered and counterclaimed for divorce on June 21, 1984 claiming in part that appellant had been guilty of homosexuality.

Upon motion of appellant, the allegation concerning the claimed homosexuality was subsequently stricken from the counterclaim. A hearing was held on August 6, 1984 before Judge Lorig. The court rendered a final judgment and decree of divorce on September 17, 1984, finding both parties guilty of gross neglect of duty and extreme cruelty.

On June 24, 1985, appellant filed a complaint individually and as father and next friend of his two children, in the Court of Common Pleas of Clark County. Appellant named Sandra McVeigh and Bertram Hack, McVeigh's counsel

in the previous divorce proceedings, as defendants. Appellant alleged defamation and the intentional infliction of emotional distress. He claimed that McVeigh and Hack included homosexuality as a ground in the counterclaim for divorce for the sole purpose of damaging appellant. Appellant also stated that as a result of the publication of the grounds for divorce in a local newspaper, he and his children had suffered severe emotional distress.

On July 29, 1985, defendants filed a motion to dismiss maintaining the complaint failed to state a claim upon which relief could be granted. Defendants argued that because the allegation of homosexuality was in a pleading and was both relevant and material to the divorce action, the statement was absolutely privileged.

On October 2, 1985, the court found defendants' motion well-taken, but dismissed only Bertram Hack. The court converted the motion to dismiss with regard to McVeigh into a motion for summary judgment and scheduled a hearing for December 17, 1985. On December 20, 1985, the court rendered a decision and judgment entry finding the insertion of the homosexuality allegation in the counterclaim for divorce was not actionable.

Appellants filed timely notices of appeal from the judgment entered in favor of Hack and McVeigh.

Appellants assert one assignment of error:

"The court erred in dismissing appellants' complaint on the grounds that it failed to state a claim upon which relief could be granted."

Appellants concede that generally no action will lie for defamatory statements made by a party in a pleading. However, they argue the principle is inapplicable in the present action because the issue before the court was not the immunity of the pleadings as published in the court records, but rather the pleadings as they appeared in the local paper. Essentially, appellants argue the initial immunity was somehow abrogated by subsequent publication in the newspaper.

The leading case concerning the actionability of defamatory statements in pleadings is *Erie County Farmers Ins. Co.* v. *Crecelius* (1930), 122 Ohio St. 210, 171 N.E. 97. In *Erie County* the Supreme Court stated:

"No action will lie for any defamatory statement made by a party to a court proceeding, in a pleading filed in such proceeding, where the defamatory statement is material and relevant to the issue." *Id.* at syllabus.

The court explained the policy behind the rule:

"* * * [T]he rule found its origin in the feeling that great mischief would result if witnesses in courts of justice were not at liberty to speak freely, and if they could not feel an assurance that they would not be subject to suits for slander and libel as a result of testimony freely given. It is of course equally necessary that attorneys should be fully protected in counseling testimony, pleadings, and other proceedings in the usual and regular course of the trial of litigated cases, and for the same reasons that other court officials, including the judge who hears and decides causes, may be unfettered in the discharge of official duties, and may not be deterred from a fearless performance of official duties by a fear of actions for defamation. The rule is grounded upon public policy, and it is of course recognized that as an incidental result it may in some instances afford immunity to the evil disposed and the malignant slanderer. * * * A contrary rule would manifestly result in a multitude of slander and libel suits, which would not only bring the administration of justice into disrepute, but would, in many instances, deter an honest suitor from pursuing his legal remedy in a court of justice." *Id.* at

214-215, 171 N.E. at 98. See, also, *Battig* v. *Forshey* (1982), 7 Ohio App. 3d 72, 7 OBR 85, 454 N.E. 2d 168.

In *Bigelow* v. *Brumley* (1941), 138 Ohio St. 574, 586-588, 21 O.O. 471, 477-478, 37 N.E. 2d 584, 591-592, the Supreme Court refined and slightly modified the test set forth in *Erie County* by stating that questions concerning the applicability of absolute privilege depend on whether the alleged defamatory statement has reference and relation to the subject matter of the action in which it is found. The *Bigelow* court noted that the great majority of jurisdictions rejected a "relevance" standard because it gave the mistaken impression that the absolute privilege in court proceedings extended only to matters which were "legally" relevant. *Id.* at 586, 21 O.O. at 477, 37 N.E. 2d at 591.

The most recent Supreme Court pronouncement concerning the absolute privilege in judicial proceedings is set forth in *Surace* v. *Wuliger* (1986), 25 Ohio St. 3d 229, 25 OBR 288, 495 N.E. 2d 939. After reviewing the policy underlying and the precedent supporting the doctrine of absolute privilege, the court stated:

"* * * While we find *Erie County* and *Bigelow* to be relatively correct enunciations of the proper standard to be applied in causes asserting absolute privilege in a judicial proceeding, we believe that the majority rule articulates a more workable standard for deciding when the doctrine of absolute privilege should apply, while recognizing the public policy considerations referred to in *Erie County, supra,* at 214-215. [Footnote omitted.]

"Thus, we hold that as a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears." *Id.* at 233, 25 OBR at 291-292, 495 N.E. 2d at 942-943.

Appellants contend that the subsequent removal of the homosexuality claim from the pleadings demonstrates the issue was neither material nor relevant to the divorce action.

We disagree. The later action of the court in striking the allegation is irrelevant as our inquiry is directed to whether the communication, as initially contained in the pleading, bore some reasonable relationship to the divorce proceeding.

Although homosexuality is not specifically enumerated as one of the grounds for divorce in R.C. 3105.01, homosexuality may constitute extreme cruelty or adultery to the other spouse, thereby furnishing grounds for divorce. See *In re Anonymous* (C.P. 1895), 2 Ohio N.P. 342, 3 Ohio Dec. 450; 47 Ohio Jurisprudence 3d (1983) 502, Family Law, Section 944. See, generally, Annotation (1961), 78 A.L.R. 2d 807. Accordingly, regardless of whether the allegation of appellant's homosexuality was true, we find that such allegation did bear a reasonable relationship to the divorce action. *Surace, supra.*

Appellants claim further that even if the allegation in the pleading was privileged, the subsequent publication of the defamatory statement in the Springfield News and Sun extinguished the initial cloak of immunity. We find this argument meritless.

Once it is determined that the pleading in issue meets the standard of bearing some reasonable relationship to the action, the grant of absolute privilege attaches. Subsequent republication of matters within those privileged pleadings in no way abrogates the grant of absolute immunity. Moreover, the pleading, once filed in the action, becomes a matter of public record, subject to possible republication in the newspaper. See R.C. 149.43 and

2303.09. If the newspaper inaccurately reported the information, appellants could pursue an action against the newspaper for the malicious publication of the article. See R.C. 2317.05.

Parenthetically we note that appellants have asserted an additional theory of liability premised on Civ. R. 11. Notwithstanding that the argument was not presented to the court below, a violation of Civ. R. 11 would possibly subject the attorney to disciplinary action, but would not bestow upon the wounded party a civil action for damages. See Staff Note to Civ. R. 11; *Border City Savings & Loan Assn.* v. *Moan* (1984), 15 Ohio St. 3d 65, 67, 15 OBR 159, 161, 472 N.E. 2d 350, 352, at fn. 1.

The trial court did not err in dismissing appellee Hack from the action as appellants were not entitled to relief under any set of facts which could be proven to support the allegations. Civ. R. 12(B)(6). Likewise, the court appropriately granted summary judgment for appellee McVeigh finding she was entitled to judgment as a matter of law. Civ. R. 56(C). Appellants' assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

KERNS and WILSON, JJ., concur.