**Arthur B. BOYD, Jr., Plaintiff–Appellant,**

v.

**Kenneth BRESSLER, Motown Record Company, Polygram, and Philips Electronics North America Corporation, Defendants–Appellees.**

No. 00–3318.

United States Court of Appeals, Sixth Circuit.

Sept. 4, 2001.

Before SILER and MOORE, Circuit Judges; STAGG,* District Judge.

* The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

SILER, Circuit Judge.

Plaintiff Arthur B. Boyd, Jr. appeals the district court's grant of summary judgment to defendants, Kenneth Bressler, Motown Record Company, Polygram, and Philips Electronics North America Corporation. Boyd argues that the district court erroneously held that the doctrine of absolute judicial privilege protects the defendants' use of Boyd's sealed bribery conviction in a prior trademark action, thus barring his claims of libel, intentional infliction of emotional distress, and invasion of privacy. Boyd also objects to the district court's ruling that Ohio Rev.Code § 2953.35 does not confer a private right of action and its criminal sanctions do not apply to the defendants. Finally, Boyd argues that the district court violated his right to due process by denying his motions to extend and compel discovery. We AFFIRM.

## II. BACKGROUND

Boyd owns the Motown Beverage Company, a soft drink manufacturing and distribution business. In 1996, Motown Record Company sued Boyd and his beverage company in federal court in New York for trademark infringement based on their unauthorized use of the MOTOWN mark. In his motion to dismiss the action, Boyd relied upon his unsworn statement that he and his company were not subject to personal jurisdiction in New York because they did not transact business in the state. Motown's memorandum in opposition, prepared by Bressler, challenged Boyd's credibility by citing his 1985 conviction for attempting to bribe a Michigan state employee to obtain an advance copy of the multi-state medical licensing exam.[1] Bressler also received a copy of the Michigan judgment of sentence from the State Medical Board of Ohio and included it, along with four newspaper articles describing Boyd's bribery conviction, in a declaration filed with the federal district court in New York.[2]

In November 1997, the district court in New York struck the defendants' answer, dismissed their counterclaims, and entered a default judgment in favor of Motown Record Company under Fed.R.Civ.P. 16(f) and 37(b)(2)(C) due to the defendants' failure to comply with court orders and forced delay of the litigation. Boyd and his company appealed to the United States Court of Appeals for the Second Circuit, which affirmed the district court's decision.[3] Both the joint appendix filed by Boyd's counsel and Motown's appellate brief included information about the Michigan bribery conviction.

In 1998, Boyd filed a complaint against Bressler, Motown Record Company, Polygram, and Philips Electronics in federal court in Ohio. The complaint contains claims of libel, intentional infliction of emotional distress, invasion of privacy, and violation of Ohio Rev.Code § 2953.35. Each claim is based on Bressler's alleged impermissible use of Boyd's bribery conviction, which Boyd had sealed under § 2953.35 in 1992.

Thereafter, the defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted, or, in the alternative, to transfer the case to New York. The court scheduled a status hearing

---

1. Motown Record's memorandum in opposition was filed on August 16, 1996.

2. Bressler's declaration was filed with the court on September 3, 1996 and served on Boyd on August 16, 1996.

3. *Motown Record Co., L.P. v. Motown Beverage Co. of Ohio,* 165 F.3d 14 (2d Cir.1998), *cert. denied,* 526 U.S. 1159, 119 S.Ct. 2049, 144 L.Ed.2d 216 (1999).

for June 30, 1999, and ordered the completion of discovery by September 27, 1999. At the status hearing, the district court notified the parties that it would convert the motion to dismiss into a motion for summary judgment. The record is void of any proof that Boyd sought discovery from the defendants from March to the September discovery deadline.

When neither party supplemented the record beyond July, the district court ordered Boyd to file and serve a supplemental memorandum in opposition and affidavits by October 15, and required the defendants to serve any reply memorandum by October 22. Based on the defendants' request, discovery was extended until November 23, 1999. The day before his memorandum due date, Boyd filed a motion to extend the filing deadline because he needed to gather unidentified information from the defendants and other sources. The district court extended his deadline to December 8, 1999, and gave the defendants until December 15 to file a reply.

On November 5, Boyd served the defendants with notices for depositions to be held the day before the discovery cut-off date and after. When he refused to withdraw the notices after Bressler and the other defendants objected, they filed motions for protective orders on the grounds that Boyd's notices were improper. On December 3, Boyd filed a motion to extend discovery until January 7, 2000, and a motion to compel the depositions he had noticed. He filed his supplemental memorandum on December 8 without additional affidavits.

In February 2000, the district court granted summary judgment to the defendants on all claims. It held that the doctrine of absolute privilege in judicial proceedings barred Boyd's libel allegation because the defendants' use of the sealed conviction record to attack Boyd's credibility was reasonably related to issues in the New York action. In addition, the court held that the intentional infliction of emotional distress and invasion of privacy claims, derived from the same facts as the libel count, were likewise barred by absolute privilege. The court also stated alternative grounds for summary judgment against Boyd's tort claims. First, it held that Ohio's one-year statute of limitations barred the libel claim and that Boyd could not establish the existence of a false statement because he admitted to the bribery conviction in his complaint. Second, the court ruled that Boyd's invasion of privacy claim failed as he could not show that the defendants intruded upon his private activities, especially since his conviction received extensive news coverage. Third, it held that the intentional infliction of emotional distress count was fatally flawed because Bressler's alleged conduct was not outrageous. Finally, the district court ruled that Boyd failed to state a claim under Ohio Rev. Code § 2953.35 because the statute did not confer a private right of action and Bressler, as a private individual, did not qualify as an officer or employee of the state. As a result, the district court did not consider the defendants' transfer request.

## II. STANDARD OF REVIEW

An appellate court reviews the grant or denial of a summary judgment motion *de novo*. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581 (6th Cir.1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed.R.Civ.P. 56(c); *see also Mitchell,* 964 F.2d at 581.

## III.  DISCUSSION

In 1992, Boyd had the record of his 1985 conviction for bribery in Michigan sealed under Ohio Rev.Code § 2953.32, which gives sentencing courts the authority to seal a first offender's conviction in any state upon petition. By sealing the offender's conviction record, the proceedings in the case are deemed not to have occurred. *See* Ohio Rev.Code § 2953.32(B)(2). As a result, the offender may not be questioned about the sealed conviction in "any appearance as a witness, or any other inquiry." Ohio Rev.Code § 2953.33(B).[4]  In addition, § 2953.35 makes it a criminal offense for a state officer or employee to release or disseminate sealed criminal information "for any purpose involving employment, bonding, or licensing in connection with any business, trade, or profession, to any person, or to any department, agency, or other instrumentality of the state or any political subdivision."

Boyd alleges that Bressler, acting with the knowledge and approval of Motown Records, Polygram, and Philips Electronics, unlawfully disseminated Boyd's expunged bribery conviction during the prior trademark case in New York. He seeks redress through three tort claims and a civil claim based upon the defendants' alleged breach of Ohio Rev.Code § 2953.35.

### A.  Absolute Judicial Immunity and Torts Claims

■ Boyd argues that the district court erred in applying the doctrine of absolute judicial privilege to Bressler's use of his sealed conviction record. Under Ohio law, the absolute judicial privilege permits the use of false, defamatory infor-

mation in judicial proceedings without civil liability. *See M.J. DiCorpo, Inc. v. Sweeney,* 69 Ohio St.3d 497, 634 N.E.2d 203, 208–09 (Ohio 1994) (citing *Bigelow v. Brumley,* 138 Ohio St. 574, 37 N.E.2d 584, 588 (Ohio 1941)). In particular, "attorneys conducting judicial proceedings are privileged from prosecution for libel and slander" based on writings or statements submitted to a court when the information is "material and pertinent to the question involved, regardless of how false, malicious, or injurious [it] may be." *Justice v. Mowery,* 69 Ohio App.2d 75, 430 N.E.2d 960, 961–62 (Ohio Ct.App.1980). In determining whether the writings or statements are reasonably related to the matter of inquiry, Ohio courts construe the absolute privilege with great liberality to assure that parties or their attorneys are not deterred from prosecuting an action vigorously for fear of personal liability. *See id.* at 962.

■ Fundamentally, Boyd argues that his causes of action are based on the defendants' violation of his statutory right to keep his conviction record secret rather than defamation alone. He asserts that the Ohio legislature's enactment of Ohio Rev.Code § 2953.31 *et seq.* for the purpose of enabling individuals to conceal certain convictions outweighs the common law principles supporting the absolute judicial privilege.

■ In his complaint and brief, Boyd reasons that as his Michigan conviction was deemed legally not to exist when sealed, Bressler presented false statements to the court when he referred to the conviction in Motown Record's motion in opposition. For a libel claim, the plaintiff must prove that: 1) the statement is false; 2) the statement defames the plaintiff; 3) the statement was published; 4) the plain-

---

4.  The exceptions to this prohibition are not     applicable to this case.

tiff suffered injury from its publication; and 5) the publisher is at fault. *See Rogers v. Buckel*, 83 Ohio App.3d 653, 615 N.E.2d 669, 673 (Ohio Ct.App.1992). First, Bressler's reference to the bribery conviction is not a false statement because Boyd admitted that he was convicted of bribery in his pleadings in this case. *See Shifflet v. Thomson Newspapers, Inc.*, 69 Ohio St.2d 179, 431 N.E.2d 1014, 1019–20 (Ohio 1982) (stating that a party is bound by a written admission, including an allegation of fact in a pleading, and cannot repudiate them later). Thus, by alleging that Bressler and his co-defendants violated § 2953.31 *et seq.* by disclosing his expunged conviction, Boyd admits the truth of his conviction and eliminates the basis for a libel claim. *See id.* at 1020.

Second, Ohio Rev.Code § 2305.11 provides a one-year statute of limitations for libel claims from the date of the defamatory material's first publication. *See Miller v. Ohio Rehabilitation Servs. Comm'n*, 86 Ohio Misc.2d 97, 685 N.E.2d 616, 618 (Ohio Ct.Cl.1997) (citing *Guccione v. Hustler Magazine*, 64 Ohio Misc. 59, 413 N.E.2d 860, 861 (Ohio Ct.Cl.1978)). Bressler served Boyd with the declaration containing the Judgment of Sentence on August 16, 1996, and filed it with the court on September 3, 1996. As Boyd did not file his libel claim until December 28, 1998, the one-year statute of limitations bars his cause of action.

■ Third, Ohio has no case law to support Boyd's proposition that the public policy supporting Ohio Rev.Code § 2953.31 *et seq.* outweighs the absolute privilege doctrine. In addition, the defendants raised Boyd's bribery conviction in order to question the credibility of his unsworn statement that neither he nor his company transacted business in New York.

In sum, construing the facts in Boyd's favor, the alleged defamatory use of his sealed conviction creates the foundation for applying the absolute judicial privilege. By admitting to the conviction, Boyd eliminated the grounds for a libel claim. In addition, he failed to pursue his defamation action within the one-year statute of limitations. Finally, Ohio law does not support his superior public policy argument. On these grounds, the district court did not err in granting summary judgment to defendants on Boyd's libel claim.

In regard to the intentional infliction of emotional distress and invasion of privacy claims, the district court relied on *Pisani v. Loparo*, No. 73219, 1998 WL 767623 (Ohio Ct.App. Oct. 29, 1998) (unpublished), to hold that both counts were barred by absolute judicial privilege because they were derived from the libel claim. Though all the claims in *Pisani* derived from the same facts, the court did not extend a derivative blanket of absolute privilege from the defamation claim to the other tort claims. Rather, each claim was examined on its own terms. *See Pisani*, 1998 WL 767623 at **3–4. Ohio courts, however, have applied the absolute privilege to derivative claims of intentional infliction of emotional distress in *Bales v. Hack*, 31 Ohio App.3d 111, 509 N.E.2d 95 (Ohio Ct.App.1986) (holding that absolute immunity negates the plaintiff's defamation and intentional infliction of emotional distress claims), and *Stiles v. Chrysler Motors Corp.*, 89 Ohio App.3d 256, 624 N.E.2d 238, 243–44 (Ohio Ct.App. 6 1993) (dealing with the application of the absolute privilege under the NLRA and citing *Hoisington v. Jones*, Nos. 89AP–720 and 89AP–743, 1990 WL 9270, *2 (Ohio Ct.App. Feb. 6, 1990) (unpublished)).

■ Boyd's claims fail on substantive grounds, however. For a claim of intentional infliction of emotional distress, the plaintiff must satisfy four elements:

1) the defendant intended to cause emotional distress or knew or should have known that the actions taken would result in emotional distress to the plaintiff;

2) the defendant's conduct was "extreme and outrageous;"

3) the defendant's actions proximately caused the plaintiff's psychic injury; and

4) the plaintiff's mental anguish is serious and "of a nature that 'no reasonable man could be expected to endure it.'"

*Tschantz v. Ferguson,* 97 Ohio App.3d 693, 647 N.E.2d 507, 513 (Ohio Ct.App.1994). The alleged conduct is "outrageous" if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *See id.* at 513–14.

■ Based on its evaluation, the district court correctly held that Bressler's alleged conduct did not qualify as outrageous. While Bressler used sealed criminal information aggressively and may have failed to properly examine its admissibility, his actions were not extreme, atrocious, or intolerable. *See Tsachantz,* 647 N.E.2d at 513–14; *Yeager,* 453 N.E.2d at 671. In addition, Boyd could have limited his injuries by objecting to the information's use and requesting its removal from the record.

In regard to the privacy claim, Boyd does not address it in his brief and thus waives it on appeal. *See Thaddeus–X v. Blatter,* 175 F.3d 378, 403 n. 18 (6th Cir. 1999).

**B. Private Right of Action**

■ Though he failed to defend his statutory claim below, Boyd asserts that he has a private right of action under Ohio Rev.Code § 2307.60 based on Bressler's alleged violation of § 2953.35. Boyd argues that as an attorney, Bressler is a public officer subject to § 2953.35's criminal sanctions for state officers who disseminate sealed criminal information.

■ Section 2307.60 states that anyone who has been injured in person or property by a criminal act has a civil action and may recover full damages and legal costs, unless specifically excepted by law. First, Ohio Supreme Court has held that §§ 2953.32 and 2953.35 do not confer a private right of action. *See Poe v. Trumbull County,* 82 Ohio St.3d 192, 694 N.E.2d 1324 (1998). In addition, Ohio Rev.Code § 2953.35 does not prohibit a private individual, like Bressler, from disseminating expunged information. *See Shifflet,* 431 N.E.2d at 1018. While Bressler may have violated § 2953.33 by including Boyd's bribery conviction in his memorandum to the court, he did not commit a criminal act under § 2953.35. Without a criminal act, Boyd does not qualify for a private right of action under § 2307.60.

**C. Discovery Motion**

■ Because it did not approve his motions to extend and compel discovery, Boyd vigorously argues that the district court denied him due process of law by its failure to aid him in obtaining information essential to the defense of his claims. While he requests a *de novo* standard of review, this court reviews the district court's actions for abuse of discretion. *See Plott v. General Motors Corp.,* 71 F.3d 1190, 1196 (6th Cir.1995). Based on the record, from March to November, Boyd did not seek any discovery from the defendants until November 5, 1999, two weeks before the November 23 deadline. Despite a sufficient discovery period, Boyd was dilatory in his discovery efforts and did not identify the information he alleges would have changed the district court's ruling. *See id.* at 1196–97. Thus the dis-

trict court did not abuse its discretion in rejecting Boyd's discovery motions.

Overall, Boyd's attempt to secure a private right of action through his alleged tort and statutory claims is meritless. Based on §§ 2953.32(B)(2) and 2953.33(B), Boyd could have protected his right to conceal his Michigan conviction by petitioning the district court in New York to strike the information from Motown Record's motion and any other submissions in the trademark case. Because Boyd failed to exercise his rights and did not present sufficient evidence to demonstrate a genuine issue of material fact on any claim, the district court's grant of summary judgment to the defendants on all counts is **AFFIRMED.**